# IN THE UNITED STATES DISTRICT COURT
# IN AND FOR THE DISCTRICT OF DELAWARE

| | |
|---|---|
| JONATHAN NARVAEZ BENITEZ, ) | |
| ) | No. _____ |
| Plaintiff, ) | |
| ) | |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| CRAB HOUSE REHOBOTH, LLC ) | |
| d/b/a CRAB HOUSE, ) | |
| ) | |
| Defendant. ) | |

## C O M P L A I N T

The Plaintiff, Jonathan Narvaez Benitez, for his Complaint against the Defendant, Crab House Rehoboth, LLC, demands a jury trial on all issues and avers as follows:

## THE PARTIES

1. Plaintiff, Jonathan Narvaez Benitez ("Plaintiff"), is a 44-year-old married father of two children, and resides in Sussex County, Delaware. Plaintiff is Spanish-speaking and of Latino descent, having immigrated from El Salvador.

2. Defendant, Crab House Rehoboth, LLC d/b/a Crab House ("Crab House" or "Defendant"), is a Delaware corporation that operates a seafood restaurant located at 19598 Coastal Hwy, Rehoboth Beach, Delaware 19971.

3. All required conditions precedent required under Title VII (42 U.S.C. § 2000e et seq.) and the equivalent State law have been exhausted and/or performed by Plaintiff prior to the filing of this Complaint. Plaintiff filed a charge of discrimination with the Delaware Department of Labor, Office of Anti-Discrimination, and received a right to sue letter on or about May 26, 2023. Therefore, this suit is timely filed.

## BACKGROUND

4.      This Complaint details the racism and discrimination Plaintiff endured as part of his employment with Crab House, and how Crab House illegally terminated Plaintiff's employment on the basis of his race, national origin, and age. Crab House's upper management turned a blind eye to the discrimination against Plaintiff, and defended the conduct of Plaintiff's racist supervisors.

## FACTS

5.      Crab House is located in a beach town and operates a restaurant seasonally between the months of April and October.

6.      Plaintiff began working for Crab House in May 2018 as a server. Plaintiff worked as a server for Crab House during the 2018, 2019, 2020, and 2022 seasons.

7.      Each season that Plaintiff worked for Crab House, he was required to apply, and be re-hired, for the server position.

8.      Plaintiff was a loyal, dedicated, and hardworking employee of Crab House. He frequently received praise from customers and managers.

9.      During the 2018 and 2019 work seasons, Plaintiff was in the top percentage of employees for total sales and credit card tips. Specifically, in 2018, for employees who worked the entire season, Plaintiff was the third-largest producer for total sales and credit card tips, and number one for average tips. In 2019, for employees who worked the entire season, Plaintiff was the highest producer for total sales and credit card tips, and number one for average tips.

10.     Plaintiff similarly worked hard during the 2020 season, but was forced to stop working after just six weeks due to health concerns with COVID-19 and being asthmatic.

11. As discussed in more detail below, Plaintiff was discriminated against on the basis of his race, national origin, and age.

12. The discrimination against Plaintiff was carried out by two individuals, Scott Wolk and Mike Muzzin, who hold supervisory positions at Crab House.

13. Upon information and belief, Scott Wolk is a staunch republican who endorses the radical and racist views associated with the far-right political movement.

14. By way of example, on the publicly-available portion of Wolk's Facebook page, Wolk's content includes, among other things:

- A shared news clip of President Obama, with Wolk commenting that President Obama is "a joke," and the Black Lives Matter movement is the "[b]iggest waste of time."

- A shared post of Donald J. Trump stating, "WE NEED A BIG & BEAUTIFUL WALL!!"

- A post equating refugees with "terrorists."

- A shared post of Governor Jack Markell welcoming refugees, with Wolk commenting that Gov. Markell "wants to welcome terrorists."

- Posting far-right political hashtags consistent with the above-referenced racist and discriminatory views, including "#Trump2016," "#BuildTheWall," and "#MakeAmericaGreatAgain."

15. Upon information and belief, the remainder of Wolk's Facebook page, which will be revealed during discovery, includes further evidence of Wolk's far-right, discriminatory views.

16. The discrimination against Plaintiff began in the 2021 work season, when Scott Wolk was responsible for hiring. Plaintiff applied for a position with Crab House, as he had done in each of the three years prior, but much to his surprise, was turned down for a position.

17. Scott Wolk told Plaintiff that Crab House already had a full staff, and there were no positions available.

18. Shortly after being turned down for a position, Plaintiff learned that Wolk continued hiring other individuals at Crab House, all of whom were decades younger than Plaintiff, and the majority of whom were Caucasian.

19. In April 2022, Plaintiff discovered that a different manager, named James, was in charge of hiring at Crab House. Plaintiff re-applied and was hired for a server position.

20. James praised Plaintiff's job performance, and repeatedly assigned Plaintiff to work large parties of guests, including a group of 50-60 persons.

21. In or around May 2022, James was part of a meeting with supervisors Scott Wolk and Mike Muzzin, wherein the pair made discriminatory comments and rebuked James for hiring Latinos. In fact, James was specifically asked, "why are you hiring so many immigrants?"

22. Shortly thereafter, upon information and belief, James quit his position at Crab House due to conflicts with Scott Wolk and Mike Muzzin. As a result, Wolk became Plaintiff's new supervisor.

23. On June 11, 2022, less than two weeks after Wolk became Plaintiff's supervisor, Wolk terminated Plaintiff's employment. Wolk claimed that Plaintiff had problems with his job performance, namely, he was too slow and left guests waiting too long for their food and drinks.

24. In all the years Plaintiff worked for Crab House, he does not recall ever receiving a complaint about his service or job performance.

25. To the extent there were genuine problems with Plaintiff's job performance, which Plaintiff disputes, he was never given any notice or opportunity for improvement.

26. Further, Plaintiff was never provided with, or asked to sign, any document concerning the purported issues with his work performance.

27. Wolk fabricated job performance issues as pretext to discriminate against Plaintiff on the basis of his race, national origin, and age.

28. Wolk also created a note, supposedly dated "June 10," stating that he spoke to Plaintiff about "his speed of service and the lack of team service," and he "would need to see some improvement in order for [Plaintiff] to still work at Crab House."

29. To be clear, Wolk never actually spoke with Plaintiff about his job performance prior to terminating Plaintiff's employment.

30. Wolk created the June 10 note in order to fabricate support for the pretextual termination of Plaintiff's employment, and to conceal the discriminatory basis for said termination.

31. Upon information and belief, Wolk created the June 10 note sometime after the termination of Plaintiff's employment, and only after Plaintiff complained of discrimination.

32. Wolk's discriminatory conduct is consistent with, and in furtherance of, his far-right political views and discriminatory animus against Hispanics, Latinos, and immigrants.

33. Wolk also told Plaintiff that his place was "in the kitchen" or nothing, which is ironic, because the kitchen environment is more demanding and faster-paced than working as a server.

34. Wolk's suggestion that Plaintiff belongs in the kitchen is further evidence of his discriminatory and racial animus.

35. It is a commonly-known, racist stereotype that Latino and Hispanic individuals are relegated to menial labor jobs, including working in kitchens, due to their immigration status, spoken language limitations, and/or perceived lack of education or intellect.

36. Two days after being terminated, Plaintiff attempted to report Wolk to a representative of Crab House's human resources ("HR") department, alleging that Wolk fabricated the issues with Plaintiff's job performance and discriminated against him.

37. The HR representative absurdly directed Plaintiff to report the issue to his supervisor, Scott Wolk.

38. When Plaintiff's report finally made it into the hands of Crab House's HR director, Rory Newcomb, Newcomb failed to meaningfully investigate the illegal discrimination and racism espoused by Crab House's staff, and instead, blindly defended Wolk's conduct and lies.

## CLAIMS FOR RELIEF

### COUNT I: DISCRIMINATION ON THE BASIS OF RACE AND NATIONAL ORIGIN, IN VIOLATION OF TITLE VII, AND DELAWARE'S DISCRIMINATION IN EMPLOYMENT ACT

39. Plaintiff repeats and realleges each and every preceding paragraph as if fully set forth herein.

40. Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq., and the Delaware Discrimination in Employment Act, 19 Del. C. § 710 et. seq., because Plaintiff is Hispanic and Latino, and discrimination based upon race and national origin is prohibited.

41. During the course of Plaintiff's employment, Crab House, by and through its agents and employees, discriminated against Plaintiff in the terms, conditions, and privileges of employment in various ways, in substantial part because of his race and national origin, in violation

of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq. and the Delaware Discrimination in Employment Act, 19 Del. C. § 710 et. seq.

42. Among other things, Crab House refused to hire Plaintiff during the 2021 season (while continuing to hire other, non- Hispanic and Latino persons), subjected him to disparate treatment, fabricated job performance issues, relegated him to work in the kitchen, and terminated his employment, on the basis of his race and national origin.

43. The above-described racist and discriminatory conduct created an intimidating, oppressive, hostile, and offensive work environment, which interfered with Plaintiff's emotional and physical wellbeing.

44. As a result of the discriminatory and offensive work environment perpetrated by Crab House and its agents and employees, and Crab House's failure to protect Plaintiff from such discrimination, Plaintiff suffered humiliation, emotional distress, and mental anguish.

45. Crab House, through its agents and employees, failed to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and failures to act, as described above.

46. Crab House failed to take all reasonable and necessary steps to eliminate racism and discrimination from the workplace and to prevent it from occurring in the future.

47. The discrimination Plaintiff faced occurred under circumstances giving rise to an inference of racial and national-origin discrimination. Indeed, the comments and actions of Crab House and its employees demonstrate that Plaintiff was subjected to discrimination because he is Hispanic and Latino.

48. As a direct and proximate result of Crab House's wrongful acts and omissions, Plaintiff has sustained injuries and damages, including, inter alia, loss of earnings and earning

capacity, loss of fringe benefits, mental anguish, physical and emotional distress, humiliation and embarrassment, loss of employment, career opportunities and professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of his choice.

### COUNT II: AGE DISCRIMINATION, IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, AND DELAWARE'S DISCRIMINATION IN EMPLOYMENT ACT

49. Plaintiff repeats and realleges each and every preceding paragraph as if fully set forth herein.

50. Plaintiff is protected under The Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623 et. seq., and the Delaware Discrimination in Employment Act, 19 Del. C. § 710 et. seq., because Plaintiff is above forty (40) years of age, and discrimination based upon age (over 40) is prohibited.

51. During the course of Plaintiff's employment, Crab House, by and through its agents and employees, discriminated against Plaintiff in the terms, conditions, and privileges of employment in various ways, in part, because of his age, in violation of the ADEA, 29 U.S.C. § 623 et. seq., and the Delaware Discrimination in Employment Act, 19 Del. C. § 710 et. seq.

52. Among other things, Crab House refused to hire Plaintiff during the 2021 season (while hiring other, substantially younger persons), subjected him to disparate treatment, fabricated job performance issues, relegated him to work in the kitchen, and terminated his employment, in part, due to Plaintiff's age.

53. The above-described discriminatory conduct created an oppressive and offensive work environment, which interfered with Plaintiff's emotional and physical wellbeing.

54. As a result of the discriminatory and offensive work environment perpetrated by Crab House, and its agents and employees, and Crab House's failure to protect Plaintiff from such discrimination, Plaintiff suffered humiliation, emotional distress, and mental anguish.

55. Crab House, through its agents and employees, failed to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and failures to act, as described above.

56. Crab House failed to take all reasonable and necessary steps to eliminate discrimination from the workplace and to prevent it from occurring in the future.

57. The discrimination Plaintiff faced occurred under circumstances giving rise to an inference of age discrimination. Plaintiff was subjected to discrimination, in part, because of his age, and Crab House employs few, if any, servers near or over the age of 40.

58. As a direct and proximate result of Crab House's wrongful acts and omissions, Plaintiff has sustained injuries and damages, including, inter alia, loss of earnings and earning capacity, loss of fringe benefits, mental anguish, physical and emotional distress, humiliation and embarrassment, loss of employment, career opportunities and professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of his choice.

**COUNT III: PUNITIVE DAMAGES**

59. Plaintiff repeats and realleges each and every preceding paragraph as if fully set forth herein.

60. Crab House's acts and omissions with respect to the treatment of Plaintiff and practices and policies at issue in this Complaint were reprehensible and outrageous and/or undertaken with reckless indifference to the rights and interests of Plaintiff.

61. Plaintiff is entitled to the maximum award of punitive damages allowed by law.

WHEREFORE, Plaintiff demands judgment against Crab House for a full and equitable money award for compensatory, liquidated, punitive, and other damages alleged herein, as may be accorded by the law, jury, and Court, plus attorney's fees, allowable pre- and post-judgment interest, and costs.

Respectfully submitted:

*/s/ Adam F. Wasserman*
Adam F. Wasserman, Esq. (#5814)
Ciconte Wasserman & Scerba, LLC
1300 King Street
Wilmington, DE 19801
(302) 658-7101
awasserman@cskdelaw.com
*Attorneys for Plaintiff*